IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ANTONIO BUEHLER,
*PLAINTIFF*

V.

Case No. 1:19-cv-188-LY

LT. DAREN HEAD, HOUSTON POLICE
DEPARTMENT,
*DEFENDANT*

**PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER**

**Introduction**

Plaintiff filed this Section 1983 Civil Rights case alleging that Defendant violated his Fourth Amendment protected right to be free from unreasonable searches on February 27, 2019. (Dkt. #2). Plaintiff urges the Court to grant a temporary restraining order that is both mandatory and prohibitory in nature pursuant to Federal Rule of Civil Procedure 65(b), and in support thereof would show as follows:

**Facts**

On February 20, 2019, Facebook, Inc. contacted Antonio Buehler (hereinafter "Buehler") to inform him that law enforcement made a request for records. (Ex. A at 1; Ex. A-1). After confirming that it was a legitimate email address, Buehler contacted Facebook to ask what type of law enforcement request it was. (Ex. A at 1). The response from Facebook included a copy of a document purporting to be an "administrative subpoena" (hereinafter "the subpoena") from Houston

1

Police Department Lt. Daren Head. (Ex A-2).

Within the subpoena, Lt. Head requests the subscriber information for every conceivable electronic device, online account, communications account, and social media account. *Id*. Included within the subpoena is a request for credit card and banking information associated with the devices and accounts. *Id*. It also includes a request for the personal unlocking codes (hereinafter "PUC/PUK") for all the associated devices and accounts. *Id*.

These PUC/PUKs are backdoor passwords to the devices and accounts. (Ex. A at 2). With those PUC/PUKs, Lt. Head can enter the devices and accounts that he requested information for and access every record kept inside the devices and accounts. *Id*.

Within those devices and accounts lie Buehler's entire personal, professional, and activist lives. *Id*. at 2-3. He communicates with his lawyers about his own lawsuits through the devices and accounts Lt. Head seeks access to. *Id*. He communicates with other attorneys about other people's lawsuits through those devices and accounts. *Id*. He communicates with other First Amendment activists through those devices and accounts. *Id*. He communicates with his students and his students' families regarding their education through those devices and accounts. *Id*. He communicates with his partner through those devices and accounts. *Id*. He communicates with people from across the country who claim to be victims of police misconduct through those devices and accounts. *Id*. Those victims include people alleging misconduct of the Austin and Houston Police Departments. *Id*.

The devices and accounts contain his personal files, banking files, contacts for his business, and countless other personal, professional, and activist files and communications. *Id*. Knowing about the subpoena, Buehler will not travel through the fifth largest city in the nation for fear he will be unlawfully arrested to have his devices seized so that Lt. Head can use the PUC/PUKs he gained

through the subpoena. *Id*. Knowing that Lt. Head can potentially gain access to his email accounts, his communications with attorneys, victims of police misconduct, other activists, and others are severely curtailed. *Id*.

## Argument

Should Lt. Head gain access to all of the devices and accounts he named in the subpoena, he will have access to information far in excess of the information at issue in *Carpenter v. U.S.*, 138 S.Ct. 2006 (2018). The subpoena cites the following authority for its issuance: Texas Code Crim. Proc. Art. 18.20, 18.21; 18 U.S.C. 2703(c)(2)(A)-(F). It also indicates that Texas law requires the responding providers to confirm receipt of the subpoena pursuant to Texas. Code Criminal Procedure article 22.04.

A. TCCP Article 18.20 sets forth the legal criteria for an order to intercept wire, oral, or electronic communications in Section 4 of that article. It specifically delineates the types of crimes for which such an order may issue. Texas Penal Code Section 38.15 (interference) is **NOT** one of those listed offenses.

B. Under Section 6(b) of article 18.20, law enforcement may ask that a prosecutor seek an order, pursuant to a sworn affidavit, but any application for intercept authorization must be made under oath to a judge of competent jurisdiction. TCCP art. 18.20(8). No judge signed the subpoena, and no prosecutor appears to have been included.

C. TCCP Article 18.21 Section 4(b) allows for a peace offer to require an electronic communications service provider to provide identifying information pursuant to an administrative subpoena "authorized by statute." The only information the provider may provide without legal process is that which they already provide in a public

3


    directory or that which is provided to emergency vehicles during an emergency event.

D.     The subpoena requests far more data than is authorized under TCCP art. 18.21(4)(b), including personal unlocking codes.

E.     Section 15 of article 18.21 provides for an administrative subpoena to issue for the identity of a carrier's customers or users of the carrier's services. That section does not authorize requests for personal unlocking codes that can be used to unlock cellphones and email accounts. Nor does it authorize requests for bank and credit card records.

F.     Texas Code of Criminal Procedure article 22.04 does not indicate that a person receiving a subpoena is required to acknowledge receipt, contrary to the language in the subpoena. That code section only sets forth the "requisites of citation."

G.     18 U.S.C. Sec. 2703 does not authorize a governmental entity to seek private party's passwords to accounts and devices, which is essentially what a personal unlocking code is.

But for this legal action, Facebook intends to disclose Buehler's information pursuant to the subpoena. (Ex. A-2). Buehler asks for a temporary restraining order preventing Lt. Head from receiving information pursuant to the subpoena and an order requiring Lt. Head to destroy any responsive information he has already received.

Buehler will suffer an irreparable injury if the requested TRO is not granted: His right to free speech will be infringed upon should law enforcement have passwords to his online accounts wherein he and others post comments critical of Defendant's law enforcement agency. *See Elrod v.*

*Burns*, 427 U.S. 347 (1976); *and Marcus v. Search Warrant*, 367 U.S. 717, 729 (1961) ("unrestricted power of search and seizure could also be an instrument for stifling liberty of expression"). He will suffer an irreparable injury if Lt. Head accesses his communications, as those include communications with lawyers about pending lawsuits against police officers. He will suffer an irreparable injury if Lt. Head accesses his communications with victims of police misconduct, as it will damage his ability to communicate with those who may be in the process of filing grievances or lawsuits against Lt. Head's law enforcement agency.

There is no adequate remedy at law should this TRO be denied, as calculating damages for law enforcement accessing Plaintiff's private accounts is impossible. More importantly, once Lt. Head reads attorney-client privileged communications, he cannot un-read them. He cannot un-read messages between parents and teacher.

There is a substantial likelihood of success on the merits, as Lt. Head seeks to circumvent the warrant requirement without legal authority to do so. *See Carpenter v. United States*, 138 S.Ct. 2206 (2018); *and see Stanford v. Texas*, 379 U.S. 476, 482 (1965).

Lt. Head would not be injured by a TRO, as he would still be able to seek a proper warrant from a judge based on probable cause *if he has probable cause*. That said, it strains credulity that Lt. Head has probable cause to believe that all of the devices and accounts he seeks access to have information about a Class B misdemeanor offense of interference when speech is a defense to that crime and Buehler has not physically visited Houston since 2015. Tex. Penal Code Sec. 38.15(d). The statute of limitations for a misdemeanor offense in Texas is 2 (two) years. Tex. Code Crim. Proc. art. 12.02.

This TRO would be in the public interest, as it involves the protection of the Constitutional rights of those who use the services of electronic communications providers, also known as

EVERYONE. It is in the public interest, as the attorney-client privilege is sacrosanct. *Henderson v. State*, 962 S.W.2d 544 (Tex. Crim. App. 1997). It is in the public interest, as Fifth Amendment rights are implicated, and law enforcement gaining access to attorney-client communications is a matter of public concern. *See a Federal Prosecutor Listened to Multiple Attorney-Client Phone Calls, Evidence Shows*, Dan Margolies, Oct. 12, 2018, https://www.kcur.org/post/federal-prosecutor-listened-multiple-attorney-client-phone-calls-evidence-shows#stream/0.

Counsel for Buehler forwarded his Original and First Amended Complaint to the City of Houston legal department. And, Houston's assistant city attorney Brian Amis informed her through email from brian.amis@houstontx.gov to forward all communications regarding this lawsuit and TRO to him. *Exhibit B, attached hereto and incorporated by reference*. She is sending this request for TRO to Brian Amis at that email address.

**PRAYER**

Buehler prays that a TRO issue that orders Lt. Head to inform all of the entities to which he sent the subpoena to refrain from sending him any records or information pursuant to that subpoena. Buehler prays that the TRO order Lt. Head to destroy any information he has already received pursuant to the subpoena. Buehler prays that the TRO order Lt. Head to submit any future "administrative subpoena" for records related to Buehler to the Court under seal before sending it to any entity.

Respectfully Submitted,
PLAINTIFF

By:
    /s/ Millie L. Thompson
Millie L. Thompson
Texas State Bar Number:  24067974

*The Law Office of Millie L. Thompson*
1411 West Ave., Ste. 100
Austin, Texas 78701
Telephone: (512) 293-5800
Fax: (512) 682-8721
Email: millieaustinlaw@gmail.com

## CERTIFICATE OF SERVICE

I, Millie Thompson, do hereby certify that on this the 1st day of March 2019, a true and correct copy of this Plaintiff's Request for TRO was served on the City of Houston Legal Department by email to Assistant City Attorney Brian Amis at brian.amis@houstontx.gov.

/s/ Millie L. Thompson
Millie L. Thompson